**No. 25-40071**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**SAMANTHA SMITH AND ROBERT MEANS**
*Plaintiffs-Appellees,*
***v.***

**UNITED STATES DEPARTMENT OF THE TREASURY, SCOTT BESSENT, in his official capacity as Secretary of the Treasury, THE FINANCIAL CRIMES ENFORCEMENT NETWORK, AND ANDREA GACKI, in her official capacity as Director of FinCen**
*Defendants-Appellants.*

---

On Appeal from the U.S. District Court
for the Eastern District of Texas, Tyler Division
No. 6:24-cv-00336-JDK

---

**APPELLEES' RESPONSE TO APPELLANTS' OPPOSED MOTION TO VACATE THE DISTRICT COURT'S PRELIMINARY INJUNCTION AND REMAND**

---

Appellees file this response to Appellants' Opposed Motion to Vacate the District Court's Preliminary Injunction and Remand.

## INTRODUCTION

This case involves a constitutional challenge to the Corporate Transparency Act (CTA)—a federal mandate that requires Appellees and 32.6 million other small businesses to disclose sensitive personal information to a federal database. This disclosure is required regardless

of whether a person is suspected of a crime or engaged in interstate commerce.

Over a year ago, the district court issued a preliminary injunction preventing Appellants (the Department) from enforcing the CTA against Appellees while this case proceeds. The district court stayed that injunction pending appeal.

After the Department appealed the district court's preliminary relief to this Court, it adopted two new rules (the 2025 Interim Final Rule and the 2026 Final Rule) narrowing its interpretation of the CTA to exclude certain United States entities. However, the Department has continued to vigorously defend its power to enforce the CTA against those entities both here and in other cases. Moreover, when asked, it refused to agree to stipulated relief to prevent enforcement against Appellees in the future.

Nevertheless, the Department now insists this case is moot and asks that this Court dismiss the case, vacate the district court's decision below, and remand. Doc. No. 108.

The Department is, of course, free to dismiss its interlocutory appeal if it wants. *See* Fed. R. App. P. 42. But the Department's voluntary regulatory change does not meet the high burden of mooting Appellees' challenge to the statute itself. And even if it did, the Department's requested relief is foreclosed by this Court's decision in *Arms of Hope v. City of Mansfield*, 114 F.4th 374, 382 n.22 (5th Cir. 2024).

As this Court explained in *Arms of Hope*, when a government appealing from a preliminary injunction argues that its changed behavior has mooted a case, the proper remedy is to dismiss the government's appeal without vacatur of the underlying injunction and then remand the

case to the district court for further proceedings. *Id.* The Department does not explain why that standard remedy is not appropriate here.

If the Department does not intend to return to its enforcement of the CTA against Appellees, then it is not harmed by the existence of a non-precedential district court opinion declaring such enforcement to be constitutionally suspect, or a preliminary injunction (which is currently stayed) temporarily requiring the same approach while this case proceeds in the district court.

This Court should therefore grant the Department's request to remand this case to the district court, but deny the Department's request to vacate the injunction or opinion below.

## STATEMENT OF THE CASE

In 2021, Congress passed (over the President's veto) the CTA as part of the annual National Defense Authorization Act. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, §§ 6401–03, 134 Stat. 3388, 4604–25 (2021) [hereafter "NDAA"] (codified at 31 U.S.C. § 5336). The CTA requires both an applicant and beneficial owner of certain entities created under state law to file a report with the Financial Crimes Enforcement Network (FinCEN) containing sensitive personal information. 31 U.S.C. § 5336(b)(1)(A). The CTA's language is clear that it applies to both domestic and foreign entities. *Id.* § 5336(a)(11)(A)(i)–(ii). Five of the CTA's eight Sense of Congress paragraphs mention problems with, and the need to regulate, domestic entities. NDAA § 6402(1)–(5).

In 2022, the Department adopted rules implementing the CTA. Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59,498 (Sept. 30, 2022) [hereafter "Original Rule"] (codified at 31 C.F.R.

pt. 1010). Like the text of the CTA itself, the Original Rule applied to domestic as well as foreign entities. *Id.* at 59,591 (adding 31 C.F.R. 1010.380(a)(1)(i)) ("Any domestic reporting company created on or after January 1, 2024, shall file a report within 30 calendar days . . . .").

Appellees are the beneficial owners of LLCs created under state law, solely for the purpose of holding a single property. In the case of Appellee Smith, the property at issue is a single-family home she inherited from her late husband's parents. ROA.16. In the case of Appellee Robert Means, the property is a small office building. ROA.17. The district court found that neither Appellee uses their LLC to engage in interstate commerce. ROA.252.

In September 2024, Appellees filed suit challenging both the statute and the Original Rule as exceeding Congress's authority under the Commerce Clause and the Necessary and Proper Clause. At the same time, Appellees moved for preliminary relief. Appellees sought a stay of the Original Rule's enforcement date under 5 U.S.C. § 705. Appellees also sought a limited preliminary injunction preventing the enforcement of the statute against them directly. Appellees argued that this separate targeted injunction was necessary because the statute regulated them on its face, regardless of the Original Rule's language.

On January 7, 2025, the district court entered an order finding that both the CTA statute and the Original Rule likely exceeded Congress's enumerated powers. ROA.254–75. But, contrary to the Department's allegations in its motion, the district court did not enter a "universal preliminary injunction." Dep. Br. at 1. Appellees told the district court they "do not seek a nationwide injunction." ROA.131. Accordingly, the

district court entered a § 705 stay of the Original Rule and a preliminary injunction of the statute that was limited to Appellees only. ROA.278.

The Department appealed the district court's preliminary relief. ROA.282. The Department then requested, and the district court granted, a stay of its order pending appeal. ROA.343.

In March 2025 the Department issued an Interim Final Rule that purported to exempt domestic entities from the CTA's requirements. Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension, 90 Fed. Reg. 13,688 (Mar. 26, 2025). This Court granted the Department's request to hold this interlocutory appeal in abeyance until the comment period for the Interim Final Rule ended. Doc. No. 90-2 at 3. This Court later extended the abeyance pending the outcome in *Tex. Top Cop Shop, Inc. v. Bondi*, No. 24-40792. *See* 2025 U.S. App. LEXIS 23492, at *7 n.1 (5th Cir. Aug. 5, 2025). Most recently, the Department promulgated a Final Rule that adopted the Interim Final Rule's amendments with some small revisions. Beneficial Ownership Information Reporting Requirement Revision, 91 Fed. Reg. 52,508 (Aug. 14, 2026).

After the Final Rule was adopted, the Department filed its present motion seeking to vacate the district court's opinion below and dismiss this case. Doc. No. 108. As explained below, that motion should be denied.

## Argument

Appellees agree that the New Rule effectively moots the Department's interlocutory appeal from preliminary relief. Given its newly stated enforcement priorities, the Department cannot claim to be sufficiently imminently and irreparably harmed by the order below to

warrant interlocutory relief here. At a minimum, the changed regulatory landscape justifies a remand to the district court.

But Appellees oppose the Department's request to declare this case moot and vacate the district court's decision. Regardless of the effects of the rulemaking on the Department's appeal, it has not mooted this case in its entirety. And even if this case were moot, vacatur of the lower court's opinion would be improper.

## I. The Final Rule Does Not Moot this Case.

When the government is the defendant, it "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).

Generally, voluntary cessation of the challenged activity alone will not moot a case. *Id.* To establish mootness, the government must also show that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 720. This remains true, even when the voluntary cessation takes the form of a rule from the executive branch. See *id.*

When the government continues to "vigorously defend[] the legality" of the challenged policy, and nothing would reasonably prevent reenactment of that policy in the future, courts are rightly skeptical that voluntary rulemaking in the face of litigation necessarily renders the case moot. *Id.* at 719.

That is what happened here. On its face, the CTA explicitly covers domestic entities like those owned by Appellees. 31 U.S.C. §

5336(a)(11)(A)(i). After receiving three court rulings[1] finding that application of the CTA to domestic entities was likely unconstitutional, the Department adopted a discretionary rule exempting domestic entities.

But the Department's Final Rule did not repeal the CTA. Only Congress can do that. *See* Repealing Big Brother Overreach Act, S. 100 & H.R. 425, 119th Cong. (2025) (proposed bills to repeal the CTA). And both in its briefing here and before the United States Supreme Court, the Department continues to vigorously defend the CTA's constitutionality as applied to domestic entities. Resp. Br. in Opp. to Cert. at 7–15, *Nat'l Small Bus. United v. Bessent*, No. 25-1201 (U.S. Aug. 21, 2026). Indeed, the Department refuses to even stipulate to future non-enforcement limited to the parties in this case. In other words, nothing in the record makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia*, 597 U.S. at 720.

Given this background, the New Rule—which is in effect nothing more than a discretionary decision regarding enforcement—is not sufficient to moot this case.

## II. Even if the Court has Doubts Regarding Mootness, the Proper Remedy Would be Remand Without Vacatur to the District Court.

Next, even if there are doubts on the mootness question, the proper remedy is remand without vacatur—not the relief the Department requests. *Arms of Hope* is instructive. In that case, a city appealed from

---

[1] *See Smith v. U.S. Dep't of the Treasury*, 761 F. Supp. 3d 952, 958 (E.D. Tex. 2025); *Tex. Top Cop Shop, Inc. v. Garland*, 758 F. Supp. 3d 607 (E.D. Tex. 2024); *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260 (N.D. Ala. 2024), *rev'd*, 161 F.4th 1323 (11th Cir. 2025), *pet. for cert. pending,* No. 25-1201 (U.S. Apr. 15, 2026).

a district court judgment preliminarily enjoining three of its ordinances. *Arms of Hope*, 114 F.4th at 376. While that interlocutory appeal was pending, the City amended those ordinances. *Id.* The City therefore argued that the appeal was moot and that the lower court's injunction ruling should be vacated.

This Court agreed that the change to the underlying laws had mooted the interlocutory appeal, but it rejected the City's request for vacatur. *Id.* at 382 n.22. As the Court explained, the fact that the interlocutory appeal had become moot did not necessarily moot the case as a whole. *Id.* at 381–82. Moreover, vacatur was not appropriate because mootness was a result of the city's actions amending its ordinances, not mere happenstance. *Id.* at 382 n.22. This Court therefore remanded the case to the district court without vacatur. *Id.*

The same approach is appropriate here. As in *Arms of Hope*, the Final Rule has sufficiently changed the facts to warrant a remand. But, as in *Arms of Hope*, those changes were the result of the Department's unilateral actions. Remand to the district court without vacatur is therefore appropriate.

The Department points to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). But *Munsigwear* vacatur is an "extraordinary" equitable remedy. *United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). It applies where the party seeking vacatur was denied the opportunity to appeal because the case became moot due to factors beyond their control. It does not normally apply when the government itself changed course after losing. *Arms of Hope*, 114 F.4th at 382 n.22 (quoting *Houston Chron. Publ. Co. v. City of League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("vacatur of the lower court's judgment is warranted

only where mootness has occurred through happenstance, rather than through voluntary action of the losing party.”)). Were it otherwise, governments could simply erase bad precedents by temporarily changing policy and then start the process all over again with a clean slate.

Thankfully, that is not the law. “Judicial precedents are presumptively correct and valuable to the legal community as a whole.” *ODonnell v. Salgado*, 913 F.3d 479, 481 (5th Cir. 2019) (per curiam). They “should stand unless a court concludes that the public interest would be served by a vacatur.” *Id.*

Here, neither the Department nor the public interest are harmed by the district court’s opinion. As the district court rightly held below, applying the CTA to Appellees is likely unconstitutional. And as this Court has previously noted, an agency suffers “no harm whatsoever” when it is enjoined from enforcing an unconstitutional law. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). And the public interest is best “served by maintaining our constitutional structure.” *Id.*

Moreover, even if Appellees are wrong on the Constitutional question, the district court’s opinion does not present a significant burden on the Department or the public as a whole. The district court’s injunction is both stayed and limited to the parties in this case. And, at least under the Final Rule, the Department will not be prioritizing enforcement against United States entities anyway. The Department has not explained why keeping the opinion in place while the case is remanded is the type of “extraordinary” circumstance that warrants vacatur.

By contrast, Appellees have a strong interest in keeping the opinion below in place while this case moves forward. The Department continues

to vigorously defend its ability to enforce the CTA both here and in other cases—including before the Supreme Court. The opinion below at least provides some safe harbor to Appellees should the Department change course yet again and decide to enforce the CTA against domestic entities. The Department's request for vacatur should be denied.

## CONCLUSION

For the foregoing reasons, this Court should grant the Department's request to remand this case to the district court, but deny the Department's request to vacate the injunction or opinion below.

Respectfully submitted,

*/s/Chance Weldon*

ROBERT HENNEKE
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
ERIC HEIGIS
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

## Certificate of Service

I hereby certify that on September 14, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/Chance Weldon*
CHANCE WELDON

## Certificate of Compliance

This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,320 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This response complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word for Office 365 in 14-point Century Schoolbook font.

*/s/Chance Weldon*
CHANCE WELDON